14-5900, 14-5947, JNJ Logistics, Sears Logistics Services v. Scottsdale Insurance Company. Arguments not to exceed 15 minutes to be shared by a plaintiff and an arena plaintiff. 15 minutes for defendants. Mr. Veazey and Mr. Lewis for the appellants. Good morning. We are going to take six minutes apiece and reserve three minutes for rebuttal. Your Honor, I'm Gary Veazey. I am counsel for JNJ Logistics. And JNJ Logistics, as part of their business model, in calendar year 2000, offered hosteling service, yard jockeys, moving trailers around warehouse lots. And as that service, they had a contract in May of 2000 with Sears Logistics Services. Sears Logistics Services, or Sears, is the owner of two separate warehouses, the same organization owned a warehouse in Memphis on Myers Avenue and in Olive Branch, Mississippi, just right across the line, that were required to have additional insured status under their contract. It's uncontested that the additional insured status for Sears was appropriately designated in the May 2000 beginning period, calendar 2001 and 2002. Those additional insured status were appropriately named and, quite frankly, somehow it changed in calendar year 3 and 4. And 4 is the big year where Darius Grove, an employee not of JNJ Logistics but a sister company, JNJ Express, was injured there at the Olive Branch, Mississippi location. Now we believe that JNJ Logistics arranged and paid every year for the additional status, the additional insured status of Sears. But somebody was sloppy here and that's what gets us where we're at, right? Sears and Sears Logistics and Sears Logistics Services are all different companies and somebody provided to Scottsdale a policy piece of information that Sears at 3456 Myers should be insured. And the insurance company says, well, there's no legal entity by that name there and we're denying coverage, basically. And the question is whether or not that ambiguity is a result of your clients or Mr. Seavers' clients' sloppiness such that there's a clear lack of ability to cover that premises or an ambiguity that we should send back to have the district court review, right? That's correct. And the only proof in the record is coming from John Ennis Sr., the major sole owner of JNJ at that time, solely responsible for the insurance. Now he says that he did not request that. Now Ruth Crocker, who is a customer service representative at Southern General Insurance Agency, says that that 03 policy was just a new policy but it comes from the existing application, which was not unusual. But that can't be the truth because we know from their admissions, Scottsdale's admissions, that 2001 and 2, the previous year to the 03 new policy, had it endorsed appropriately. So we also know from the record that there has been actual losses that have been paid by Scottsdale during the 2001 calendar year. So they know what our business is, according to Ruth Crocker. They know that these locations, what services are performed there. And it is sloppy. Somebody dropped part of a name. But it apparently is in the agent's responsibility. And Tennessee has a statute on that. And that statute, of course, is cited in our brief. But if there's a conflict about terms and policies, additional insurance status, it's the agent of the insurance company, Scottsdale, that is responsible for that. It's not our responsibility because we didn't ask for a change. J&J Logistics maintained the same business partnership from May of 2000 until after Darius Grove was injured in the summer of 2004. So it's ambiguous in its terms and therefore we have the appropriate inferences as the insurance client. Right. But you created the ambiguity. Well that's not the record. The record is that we did not create that ambiguity. The agents, and there's no proof other than John Ennis' declaration here. He did not request. There would be no reason to request. His partnership, his contract with Sears remains constant from May 2000 through after Darius Grove's injury. So it's not our responsibility to accurately type, if you will, the name of a full legal entity. We gave them… So let me, I'm trying to understand this. I should probably, and I really apologize to Mr. Lewis. I transposed your name. I suppose I should ask Ms. Sawyer this, but the argument of the defense, as I understand it here, is not that it unambiguously states the proper owner and operator of the property where the injury occurred. It unambiguously states an entity that doesn't exist. And what you're saying is that the ambiguity here is in the misidentification of the property and the operator and the ownership. Correct? Well, it's more than I would concede that it is not the appropriate name. While it's not Sears Logistics Services, it is Sears, and it's not a location that's covered, it's an organization that's covered. However that, for lack of a better phrase, a typing error occurred, it's not the responsibility of J&J Logistics because we know that it was done correctly for two and a half years. And in their process somehow, some way, it changed. But yet it's the same people, it's the same entities, it's the same business purpose that requires the additional insured status. Even though you lost on this question, you won on the merits, didn't you? I did, but the additional insured status is a significant fact. Why is that? Well, because I have won on the duty to indemnify and defend under a certain portion of the contract itself. Well, the broader question is the additional insured. So that means that they, Scottsdale, becomes the insurance agent for Sears Logistics Services and any claims that arise from there come from Scottsdale. So it's a very significant point. Gotcha. And I see my time is up. Mr. Lewis. Good morning, Your Honors. I'm Goodloe Lewis on behalf of Sears Logistics Services. And just to tag on to that answer, Judge Murphy, I think the reason that it is also important to J&J Logistics is if this decision stands, they have breached their contract with us to make us an additional insured. And we have an indemnity suit pending against them in Mississippi trying to get our money back. So it's very important to them under those circumstances. I think an important point that comes out of both Scottsdale's argument in this case and the district judge's opinion is who got insured here? Because it's very clear that Sears, 3456 Myers is insured, right? Very clear. Your Honor, I believe that it is clear that somebody called Sears got insured. Well, that's what the policy says, Sears, 3456 Myers, M-E-Y-E-R-S. That's who's the additional insured. Right. No ambiguity. Our position is the address is meaningless for additional insured status. That's what Scottsdale's corporate representative testified to. That's where Ruth Crocker, who was their agent, testified to. That's just a mailing address. It might as well have been a P.O. box. It had nothing to do with who the additional insured was. And interestingly, Your Honor, and I'm digressing a little bit, the form changed in 2004 after this loss, where you did have to list the location of insured operations. But you didn't have to do that at the time the policy was taken out and at the time the loss occurred. And so if it wasn't Sears Logistics Services, Inc. that got insured, who was it? I'm sure they'd like to know. Well, it could be Sears Roebuck & Company, Sears Holdings Corporation, maybe some other entity with Sears in the name, right? I agree, but that wasn't the intent of the parties. Right. So we're dealing with a latent ambiguity as opposed to a patent ambiguity, correct? In other words, what I was saying is that there's no ambiguity that Sears, 3456 Myers is covered, right? No question about it. That's what the policy says. But based on your argument and the facts that were reduced below, we don't know whether or not any of those other companies were covered, right? Well. So there's an ambiguity. I agree. And we know Sears Logistics Services is dealing with Mr. Veazey's client, right? Your Honor, I would say if there's an ambiguity, then the court needs to reverse and remand for resolution of these fact questions as to what the ambiguity is. Okay. But, you know, Sears Logistics Services, Inc. was doing business at this Myers location, okay? That was the company doing business there. And I would submit to the court that the upshot of the district court opinion is, and this position taken by Scottsdale, is that if Mr. Grove had been injured at the location on Myers in Memphis rather than the location on Isle of Branch, in Isle of Branch, Mississippi, that they'd been covered. I hate to interrupt. I really do. But correct me if I'm wrong. The position taken by Scottsdale is that without a latent ambiguity, Sears, 3456 Myers is the insured, but there's no such entity, so we don't cover them, right? Right. And they collected a premium to not cover anybody. And that's the point I was making. If Mr. Grove had filed suit against Sears Logistics Services, Inc. for this hypothetical accident which occurred in Memphis at this Myers location, Scottsdale says, sorry, you know, Sears Logistics, not Sears. It's, you know, a denied claim, and it goes back to what I said earlier, is that J&J didn't buy anything. They didn't get anything for their money in this case. I can talk about the second additional insured form if the court has any questions. You know, I frankly believe that the form that was submitted that did have Sears Logistics Services on it subsequent to this loss, subsequent to this claim, it's our position that that really supports our argument because it could have been submitted to clarify the fact that Sears Logistics Services is the insured here. Okay? That's a reasonable inference. Because the form changed, they may have decided, well, you've got to submit a new form. That's a reasonable inference. These are all fact questions that can only be resolved by the finder of fact. Your Honors, we believe there's ample evidence for the court to reverse and render and find that there's coverage in this matter. But also, at a minimum, because of the ambiguities in the policy, the court, we'd ask the court to, in the alternative. With all the fact questions that you just acknowledged? Right. That we've rendered judgment? Well, we believe that the court may reverse and render because the intent of J&J was only to insure Sears Logistics. And Scottsdale, their representative, corporate representative said, we don't know if there's a difference between Sears and Sears Logistics. Now, they backed off of that in their briefing. But, you know, there was only one entity that was intended to be insured. Well, this all presumes kind of factual findings in your favor. Sure. But, okay. We'll take a reverse and remand. All right. Thank you. Ms. Sawyer. Good morning, Your Honors. Charlotte Sawyer on behalf of Scottsdale Insurance Company. I represent Scottsdale. I think it's important to note that the policy was subject to not just one additional insured endorsement when the policy was in effect, but two. It was Sears located on Myers Road in Memphis and Coors located also in Memphis. Four months after the accident, a third additional insured endorsement was added naming Sears Logistics Services. As noted by J&J in its brief, prior to this policy that's at issue being issued by Scottsdale, there were multiple additional insured endorsements under that policy as well. One was named as Sears. One was named as SLS. Then we go to this policy. It's a new policy. We get an application in. It was an old application, but it was a form that was used. It wasn't, you know, see previous years. When that came in, Sears on Myers Road was listed in Coors. When the policy was renewed. Does that mean that was what was on the form? Yes. Yes. Sears was listed and so was Coors. The mistake was not yours? If there was a mistake here, then I believe that J&J ratified that mistake by paying the premium for that third endorsement and continued to ratify any alleged mistake in that next policy. The mistake issue is important. But the premium paid for coverage to the question is raised who was covered with that premium. Correct. And Sears is named as the entity. What entity would that refer to? Well, it's our position that a reasonable interpretation of Sears is Sears is Sears Roebuck, like we all know Sears to be, the holding company. Not any and all subsidiaries with the name Sears included. Was Sears Roebuck the holding company? Yes. And SLS has stated in its corporate disclosure statement that it is a subsidiary of Sears Holding. So if all Sears entities were insured, we'd come up with the absurd result that every entity that is a subsidiary of Sears would be covered under this policy. Clearly a premium was not paid for that. Well, I mean the premium probably didn't cover all claims by Sears in general, the big Sears. The premium couldn't have been that significant? Well, I think obviously the policy was not issued to Sears, correct. But if it had been understood in that way, their premium would have been a lot larger, and they might have been put on notice. I get your point, and I think the distinction here is that the premium was paid for a specific type of coverage. The liability that was covered, it has to arise out of the named insured's operations. So there has to be some connection to J&J. It's not unlimited coverage under the additional insured endorsement. It's not as if they're now a named insured under the policy. It's an additional insured status issue with limited coverage available, hence the outrageous premium. I didn't catch that. The additional insured has to be connected to J&J? Yes. And your people have to know that at the time they're evaluating claims? Is that what you're saying? That is how the additional insured endorsement is worded specifically. It says that the who is an insured provision of the policy is amended to include the personal organization shown above, but only with respect to liability arising out of the named insured's operations. Was I right when I was questioning Mr. Lewis? I mean, you're saying when your folks look at this policy and look at a claim and determine whether or not to pay, you're saying that, oh, Sears at 3456 Myers is the insured, unambiguous. Then you go to pay the claim and determine there's no such entity, so you don't pay it. I think the way that we looked at it was that Sears is listed as a policy, as the AI entity, and their job is to look at the four corners of the underlying complaint and the policy. The policy says Sears. This is Sears Logistics Services, Inc. I think a reasonable conclusion is that the only reasonable conclusion is that they're not the same and that Sears could be like Sears as we know it, a store. Haven't you insured Sears Logistics Services as an additional insured under their policy in the past? We had, and I think that's an important point. Sears and Sears Logistics Services were named as AIs. A new policy in previous years, a new policy is issued. You're their agent, and even if they use what might be considered shorthand on a form, wouldn't you have had some inkling that they were trying to insure the same entity? Well, my question is why have two additional insured endorsements, one for Sears and one for Sears Logistics Services? There must be some difference between the two. Why would you pay two premiums for the same additional insured status and have two separate endorsements? But they did pay, so they should get something for it. They did pay in previous years for SLS and Sears. For the policy at issue, initially they paid for Sears and for Coors. Now, as an insurance company, obviously— They paid for two Sears entities in the past? Correct. Okay, and if I'm mistaken in that assumption, my apologies to the court. When Sears was named under this policy, we've had Sears, we have Coors. Again, we have Sears Logistics Services. The next policy, again, has Sears Logistics Services. Well, the next application to renew. I mean, maybe there is a new policy, but I'm viewing this as renewals. When they come up, we fill out the forms. We apparently sloppily fill out the forms. But you formally insured the entity that is at bar here today? J&J Logistics. Whose claim didn't get paid? We have denied coverage to Sears Logistics Services. Right, you used to insure them. We insured them when a premium was paid. A premium that was labeled rightly. Your point is they sent you a premium. We've talked about this, haven't we, counsel? A premium was paid for an entity that nobody knows who got the insurance. It is our position that Sears is a Sears store, a Sears warehouse. As an insurance company, we do not— You don't care. It's not your job. No, no, it's not that we don't care. It's that these are sophisticated companies with multiple contracts with multiple companies, and if there was— They're a sophisticated company, too, right? Yes, Your Honor. So you would know J&L's business, right? Yes, we are aware of J&J's business. So if you've insured Sears Logistics Services in the past, and now you're insuring a bunch of Sears stores, you think, don't you think you'd ask why J&L was carrying the Sears that included Sears stores as an additional insured? What's changed about J&L? Nothing. Well, Your Honor, there may have been a change in their contracts with the companies that they work for. You can see that we think it's a gotcha. Well, I think that if it is a mistake, if there was a mistake in issuance of the policy, a mistake by Scottsdale, Scottsdale's agent or any other agent, was not alleged in this declaratory judgment action. J&J's counsel filed a motion for leave to file a reformation action. That motion was denied because we didn't have an opportunity to defend such a claim. Along the lines of Judge Murphy's questions, why isn't there a latent ambiguity in this policy, and why doesn't the intent of the parties matter? Well, I think you first have to look at the four corners of the policy, and in my view and it is our view that a reasonable interpretation of this Sears endorsement is that it means Sears, the big company, are insured. If there are multiple Sears entities and it seems unlikely that J&L is trying to insure big Sears, why isn't there an ambiguity in the face of this document? I don't think it's necessarily unlikely that they are doing business with Sears. Why is the inference this is Sears Roebuck any more reasonable than the inference it might well refer to other Sears entities? I think when you look at the policy as a whole and you have Sears, Coors, and then four months after the accident Sears Logistics Services, I think you have to read the policy as a whole, and that last endorsement was added and effective after this loss. I think that the fact that SLS may own or operate warehouses in Memphis or Mississippi is really a moot point. These different entities can operate out of the same location, especially when they're closely related. Counsel for J&J argued that the only proof of any party's intent is Mr. Ennis. We've also got deposition testimony of Ms. Crocker with SGA Agency.  Scott Stahel did not allege or argue or claim that there is no difference between Sears and SLS. It said it is their view that they are different names, different entities, and should be treated differently. I don't think this is a case of pretrial estoppel involving admissions of facts. Again, there are no allegations of mistake by Scott Stahel or anyone acting on Scott Stahel's behalf. Notably, the statute cited by J&J governing the acts of insurance agencies and how they are attributed to insurers does not apply to surplus lines brokers. Since a reformation claim was not made, we have not had an opportunity to conduct any discoveries to whether the statute even applies in this situation. If you all have no further questions, you may rest. Thank you. All right. Who's talking? Apparently I am, Your Honor. I don't have much to say, Your Honor. I think the briefs have been very well put together. Our position is well known throughout the briefs. The fact that there is a suggestion, and I know Ms. Sawyer, and I don't think she would intentionally say this, but there was no misunderstanding as to the additional insured for the first two and a half years. There never was until this November 04 red herring that there was a SLS, Sears Logistics Service, and Sears that were generating additional premiums until after the event. No one knows where that came from, and again, the proof is in the record for J&J through Mr. Ennis that he did not, the sole individual with the responsibility for J&J, he did not request an additional insured of SLS in November of 2004. So the only proof in the record is we didn't do it. So given that, we paid for and expect the additional insured coverage throughout the relevant period of time of 2004, and that's what we're asking this court to do is to reverse the summary judgments and send it back, and let's argue about these facts, and let's let the facts come out. We appreciate the arguments all of you have given, and we'll consider the case carefully. Since the remaining cases are on the brief, she may adjourn court.